### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

DORIS WHITE THOMAS,　　　　　　　　:

　　　Plaintiff,　　　　　　　　　　　:

v.　　　　　　　　　　　　　　　　　:　　　　CA 2:12-00049-C

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]　:

　　　Defendant.　　　　　　　　　　:

### MEMORANDUM OPINION AND ORDER

The plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 18 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (Doc. 12), the plaintiff's brief (Doc. 13), the Commissioner's brief (Doc. 15), and the arguments presented at the February 15, 2013 Hearing, it is determined that the Commissioner's decision denying the plaintiff benefits should be **REVERSED AND REMANDED** for further proceedings not inconsistent with this decision.[2]

---

[1]　　　Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Colvin is substituted for Michael J. Astrue as the proper defendant in this case.

[2]　　　Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 18 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for

## Procedural Background

On March 30, 2010, the plaintiff filed applications for DIB and SSI (R. 150-156), alleging disability beginning March 1, 2008 (*see* R. 10, 150-151, 172).   Her applications were initially denied on May 27, 2010.   (*See* R. 89-94.)   A hearing was then conducted before an Administrative Law Judge on September 7, 2011 (*see* R. 48-87).   On October 25, 2011, the ALJ issued a decision finding that the claimant was not disabled (R. 7-25), and the plaintiff sought review from the Appeals Council.   The Appeals Council issued its decision declining to review the ALJ's determination on December 1, 2011 (*see* R. 1-6)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on April 27, 2012 (*see* Doc. 1).

## Standard of Review and Claims on Appeal

In all Social Security cases, the plaintiff bears the burden of proving that he or she is unable to perform his or her previous work.   *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the plaintiff has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history.   *Id.*   Once the plaintiff meets this burden, it becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.   *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).   Although at the fourth step "the [plaintiff] bears the burden

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the ALJ's decision to deny plaintiff benefits is supported by substantial evidence.   Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."   *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."   *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).   And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence."   *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the plaintiff asserts three separate claims:

1.   The ALJ erred in rejecting the opinions of both treating physicians, Drs. Fitz-Gerald and Timberlake;

2.   The ALJ erred in crediting the conclusory opinion of a consultative examiner, Dr. Chu, and the "non-opinion" of the non-examining, reviewing DDS physician; and

3.   The ALJ erred in formulating a residual functional capacity ("RFC") that is not supported by substantial evidence.

(Doc. 13 at 1.)

**Discussion**

The three claims on appeal ultimately go to how the ALJ reached his RFC determination and, moreover, for purposes of this Court's review, whether the RFC determination is supported by substantial evidence.   Here, the ALJ determined that the plaintiff retains the RFC to perform sedentary work with certain additional restrictions.   Specifically, his finding at step five is:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following exceptions:   She must be afforded a sit/stand option.   She is limited to occasional bending, stooping, squatting, and crouching.   She is precluded from performing pushing and pulling activities with the lower extremities.   She is precluded from climbing, driving, exposure to unprotected heights, and operation of hazardous machinery.

(R. 14.)

Because the plaintiff takes issue with (1) the ALJ's decision to reject the opinions of her treating physicians in favor of opinions rendered by a consultative examiner and a reviewing source and (2) the ALJ's ultimate RFC assessment, formed after consideration of these opinions, the Court again sets forth, in detail, the proper analysis for consideration of RFC issues raised in cases like this one.

    *1.    The Commissioner's RFC Assessment.*

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms."   *Peeler v. Astrue*, 400 Fed. App'x 492, 493 n.2 (11th Cir. Oct. 15, 2010) (per curiam) (citing 20 C.F.R. § 416.945(a)).   Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations

4

caused by his . . . impairments.'"   *Hanna v. Astrue*, 395 Fed. App'x 634, 635 (11th Cir. Sept. 9, 2010) (per curiam) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004)).   "In making an RFC determination, the ALJ must consider the record evidence, including evidence of non-severe impairments."   *Id.* (citation omitted); *compare* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), *with* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC—a deep-seated principle of Social Security law, *see* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.")—that this Court has never taken issue with.   *See, e.g., Hunington ex rel. Hunington v. Astrue*, No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned).   The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources.   20 C.F.R. § 416.945(a)(3).   In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as

5

"descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]"   *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section."   20 C.F.R. § 416.945(a)(4).

> (b)   *Physical abilities.*   When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.   A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

> (c)   *Mental abilities.*   When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.   A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work-setting, may reduce your ability to do past work and other work.

> (d)   *Other abilities affected by impairment(s).*   Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities.   If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence.   *Compare Figgs v. Astrue*, No. 5:10–cv–478–Oc–18TBS, 2011 WL 5357907, at *1-2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is

not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved*, 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), *and Scott v. Astrue*, No. CV 110–052, 2011 WL 2469832, at *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted*, 2011 WL 2461931 (S.D. Ga. June 17, 2011), *with Green v. Social Sec. Admin.*, 223 Fed. App'x 915, 923-24 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work.").   And while, as explained in *Green*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's decision to give less than controlling weight to such an opinion,[3] 223 Fed. App'x at 923-24; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her

---

[3]         An ALJ's articulation of reasons for giving less than controlling weight to a treating source's RFC assessment must, of course, be supported by substantial evidence.   *See, e.g., Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. Sept. 21, 2010) (per cuiam) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.   In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Soc. Sec. Admin.*, 389 Fed. App'x 944, 947-48 (11th Cir. July 28, 2010) (per curiam) (same).

remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), ___**nothing**___ in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must ___**link**___ the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[4]    *Compare, e.g., Saunders v. Astrue*, Civil Action No. 1:11cv308–WC, 2012 WL 997222, at *5 (M.D.

---

[4]      In *Green*, such linkage was easily identified since the documentary evidence remaining after the ALJ properly gave less than controlling weight to the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication."   223 Fed. App'x at 923-24.   Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work."   *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" ___**must**___—___**in all cases**___—include an RFC or PCE from a physician.   *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added).   But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence.   [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp. 2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying."), *with* 20 C.F.R. § 416.945(b), (c) & (d); *see also Packer v. Astrue*, Civil Action No. 11–0084–CG–N, 2013 WL 593497, at *4 (S.D. Ala. Feb. 14, 2013) (Granade, J.) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.") (quoting *Salter v. Astrue*, No. CA 11–00681–C, 2012 WL 3817791, at *3 (S.D. Ala. Sept. 4, 2012)).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision.   For example, in *Hanna*, the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.'   In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . .   [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work.   ***But this conclusion is not clear from the record.***   The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional

fingering, handling, and gross and fine manipulation.   The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.   *The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.*   The ALJ has not done so here.   To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence.   The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work.   *Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."*

395 Fed. App'x at 635-36 (emphasis added and internal citations and footnotes omitted);

*see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27,

2012) ("'The existence of substantial evidence in the record favorable to the

Commissioner may not insulate the ALJ's determination from remand when he or she

does not provide a *sufficient rationale to link such evidence to the legal conclusions

reached*.'   Where the district court cannot discern the basis for the Commissioner's

decision, a sentence-four remand may be appropriate to allow him to explain the basis

for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005))

(emphasis added); *Packer*, 2013 WL 593497, at *4 (While "the Eleventh Circuit has

declined to impose overly rigid requirements when reviewing disability decisions[,]

meaningful review . . . requires [that] ALJs [ ] state with clarity the grounds for their

decisions.") (internal citations and quotation marks omitted); *cf. Keeton v. Dep't of Health

& Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to

apply the correct law or to provide the reviewing court with sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal.")

(citation omitted); *Dixon v. Astrue*, 312 Fed. App'x 226, 229 (11th Cir. Fed. 13, 2009) (per

curiam) (after noting,"'[w]hile we may not supply a reasoned basis for [an] agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned[,]'" vacating a district court's decision to affirm the ALJ where "the ALJ's path [was] not reasonably discernible") (quoting *Zahnd v. Secretary, Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007)).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision.   *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . .   There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].   However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.   Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.") (emphasis in original); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

11

    2.    *Treating Sources—Drs. Fitz-Gerald and Timberlake*

Given the standard set forth above, the Court must first determine whether the reasons articulated by the ALJ for not giving controlling weight to the opinions of Drs. Fitz-Gerald and Timberlake, treating medical sources, are supported by substantial evidence. *See, e.g., Thomas v. Astrue*, No. CA 11–0406–C, 2012 WL 1145211, at *9 (S.D. Ala. Apr. 5, 2012) ("Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of [the treating physician's] PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence."). A finding that the ALJ failed to articulate reasons, supported by substantial evidence, for rejecting a treating source's opinion, or a portion thereof, ends the Court's review of an ALJ's RFC determination and generally mandates remand.

    As to treating sources, one district court outside of this Circuit has said:

> In every case, a treating physician will have greater access to the medical records, and more familiarity with the patient and his condition than will an examining physician or a physician who merely reviewed the record evidence. This is the reason for the treating physician rule whereby greater deference is usually accorded to the opinion of a treating physician than the opinion of a physician who has only examined the patient one time or the opinion of a physician who has merely reviewed the medical records. This is the reason the courts require an ALJ to provide specific, legitimate reasons for discounting a treating physician's opinion.

*Vine v. Astrue*, Civil Action No. 09-2212-KHV-GBC, 2010 WL 2245079, at *11 (D. Kan. May 11, 2010) (internal citations omitted), *report & recommendation adopted*, 2010 WL 2245076 (D. Kan. June 2, 2010). And the law in this Circuit is that

> [t]he opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

12

physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert*, 396 Fed. App'x at 655; *accord Cain v. Barnhart*, 74 Fed. App'x 755, 756 (9th Cir. Aug. 26, 2003) (mem.) ("We conclude that the ALJ erred by according greater weight to the opinion of a non-examining, non-treating physician than to the opinions of Cain's treating and examining physicians without providing 'specific' and 'legitimate' reasons supported by 'substantial evidence in the record' for doing so.") (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)).

The ALJ, in his decision, concludes that "[t]he opinions of the Fitz Gerald & Peret Clinic from October 2011[5] and of Dr. Timberlake from July 2011[] are entitled to no weight to the extent [they are] not consistent with [the ALJ's] residual functional capacity assessment.   They are not supported by or consistent with the weight of the objective medical evidence and are clearly extreme and exaggerated."   (R. 20.)   The ALJ first discusses at length a physical capacities evaluation ("PCE") provided by Dr. Fitz-Gerald (or his clinic) in October 2010 (*see* R. 17) and then concludes,

the objective medical evidence in the record as of October 2010 does not in any way support the extreme limitations contained in the [PCE].   While there is some evidence of low back/right leg pain, varicose veins in the left lower extremity and associated pain, and fibroid tumors and associated abdominal pain, the evidence does not support the extreme limitations indicated, or a severe worsening of the claimant's conditions since her May 2010 examination by Dr. Chu, discussed in detail above. Indeed, there is no evidence whatsoever to support any limitations on overhead reaching, gross manipulation, or fine manipulation, yet such

---

[5]      A review of the record makes it is clear the ALJ meant October **2010**.   (*See* Ex. 11F; R. 315-317.)

limitations are included.   For these reasons, this opinion from an essentially unknown source is entitled to little to no weight.

(R. 17-18.)

As to the medical source statement provided by Dr. Timberlake, a physician at the Hale County Hospital Clinic, the ALJ initially notes, "[a]lthough the record includes various treatment notes from Hale County Hospital Clinic, it is not clear how many times the claimant saw Dr. Timberlake as opposed to another doctor or even a nurse or other medical staff[,]" and then characterizes Dr. Timberlake's opinion as "even more extreme than the opinion from Fitz Gerald & Perret Clinic."   (R. 18.)   With regard to this medical opinion, the ALJ concludes,

> Once again, the objective medical evidence in the record as of July 2011, does not in any way support the extreme and clearly exaggerated limitations identified by Dr. Timberlake.   There is no evidence whatsoever to support any limitations on overhead reaching, gross manipulation, or fine manipulation, yet such limitations are included, and are even more severe than the limitations in the Fitz Gerald & Perret Clinic opinion.   For these reasons, this opinion is entitled to little to no weight.

(R. 19.)

It is not error for an ALJ to give less than controlling weight to a treating source opinion that is not supported by objective medical evidence.   *See Hicks v. Astrue*, No. CA 07-0307-C, 2008 WL 906572, at *3 (S.D. Ala. Apr. 2, 2008) ("This Court finds that the ALJ correctly determined that Wood's findings on these forms were conclusory, unsupported by the doctor's own clinical findings, and inconsistent with the other objective evidence of record."); *Farkas v. Astrue*, No. 3:11–cv–242–J–TEM, 2012 WL 750547, at *8 (M.D. Fla. Mar. 8, 2012) ("The ALJ did not assign Dr. Pearce's opinion controlling weight, finding that his opinion was not supported by objective medical evidence and was inconsistent with other substantial evidence . . . .   This Court finds

14

substantial evidence supports the ALJ's decision in not assigning Dr. Pearce's opinion controlling weight."); *Powell v. Astrue*, No. CV 108–119, 2009 WL 4015593, at *5 (S.D. Ga. Nov. 19, 2009) ("Because Dr. Epter's opinion was merely conclusory and inconsistent with the objective medical evidence and his own treatment records, the ALJ's decision to reject it is supported by substantial evidence.") (citation omitted); *Stanton v. Astrue*, 617 F. Supp. 2d 1205, 1220 (M.D. Fla. 2008) ("The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.") (citation omitted).  The Court finds, accordingly, that the ALJ's decision articulates sufficient good cause (*i.e.,* the stated reasons are supported by substantial evidence) to give less than controlling weight to the opinions of Drs. Fitz-Gerald and Timberlake, and will turn now to determining whether the ALJ's RFC determination, which relies in part on non-treating medical opinions from Drs. Chu (a consultant) and Heilpern (a DDS examiner), is supported by substantial evidence.

        *3.      The ALJ's RFC determination.*

As provided previously, "RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence." *Watson v. Astrue*, Civil Action No. 2:10–CV–200–TFM, 2011 WL 626559, at *4 (M.D. Ala. Feb. 11, 2011) (citing *Phillips*, 357 F.3d at 1237–39); *accord Hanna*, 395 Fed. App'x at 635.   "It also can contain both exertional and nonexertional limitations," and "requires, in essence, a function-by-function assessment of a claimant's ability to perform work-related activities 'on a regular and continuing basis.'"   *Id.* (quoting 20 C.F.R. § 404.1567(b)) (other citations omitted).

To find that the ALJ's RFC determination is supported by substantial evidence, the determination must be linked to specific evidence in the record regarding the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work.   If the ALJ's decision provides such linkage—that is, it gives this Court a sufficient rationale to link his legal conclusions to the record evidence remaining after any decision to give less than controlling weight to the opinions of the plaintiff's treating physicians—the ALJ's RFC determination is supported by substantial evidence and will be affirmed.

Here, after he rejected the opinions of Drs. Fitz-Gerald and Timberlake, the ALJ discounted the plaintiff's testimony and chose to accept reports from Drs. Heilpern and Chu, stating:

> Despite her impairments, the preponderance of the evidence simply does not support the level of pain and extreme limitations alleged by the claimant and set forth in the opinions from [Drs. Fitz-Gerald and] Timberlake.   Indeed, the claimant goes for weeks and months without seeking treatment.   I recognize that the claimant has alleged that she cannot afford the recommended treatments; however, she does have at least some health insurance, and there is no evidence that she has actively sought low cost treatments or pursued alternatives like physical therapy. In fact, it appears that the claimant's lumbago was not even a severe impairment before May 2011, calling into question whether it meets our durational requirements[. [6] ]   In short, the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible and are not supported by the objective medical evidence in the record.   I have fully accounted for the claimant's symptoms in the above residual functional capacity assessment by providing for a sit/stand option; limiting bending, stooping, squatting, and crouching; precluding all pushing and pulling of the lower extremities; and precluding all climbing, driving, exposure to unprotected heights, and operation of hazardous machinery.

---

[6]        This statement notwithstanding, the ALJ concluded that the plaintiff's lumbago is a severe impairment, finding it "to be more than [a] slight abnormalit[y that has] more than a minimal effect on [her] ability to perform basic work activities."   (R. 12.)

> As for the opinion evidence, [t]he opinions of Dr. Heilpern and Dr. Chu as of May 2010, are entitled to some weight to the extent consistent with the above residual functional capacity assessment and accounting for later evidence that indicates additional limitations.   They are consistent with and supported by the evidence available at the time. . . .

> Consequently, taking all of the above into consideration, including the testimony given at the hearing, I conclude that although the evidence establishes underlying medical conditions capable of producing some pain and other limitations, substantial evidence does not support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations as alleged by the claimant.   The claimant's alleged inability to perform all substantial gainful activity simply is not corroborated by the evidence in the record considered as a whole.

(R. 19-20.)

And, in formulating his RFC, the ALJ discussed at length the medical evidence in the record, including the records from three treating sources other than Drs. Fitz-Gerald and Timberlake—Dr. Dismukes (*see* R. 16; *see also* R. 226-229); Dr. Simpson (*see* R. 16; *see also* R. 304-309); and Dr. Claytor (*see* R. 18; *see also* R. 356-364).   The ALJ also considered, as previously stated, the plaintiff's testimony and noted that "[t]he record includes" a disability report, a function report, a third-party function report (completed by the plaintiff's daughter), and a pain questionnaire.   (*See* R. 14-15.)   ***But,*** despite the ALJ's consideration of (or citation to) this evidence, he fails to link the evidence to his legal conclusion regarding the plaintiff's physical abilities—that she retains the residual functional capacity to perform less than the full range of sedentary work, which is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Although this Court has rejected the requirement that an ALJ's RFC determination **always** be supported by an RFC or PCE from a physician, *see* discussion, *supra*, note 4, an ALJ's decision must, nevertheless, "be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole **equates to in terms of physical abilities**." *Stephens*, 2008 WL 5233582, at *3 (emphasis added) (citing *Cole*, 293 F. Supp. 2d at 1242 ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")); *compare id.*, *with Doss v. Astrue*, No. CA 07-0375-C, 2007 WL 4570551, at *3 (S.D. Ala. Dec. 20, 2007) ("There is no evidence whatsoever which establishes that plaintiff can perform the physical requirements of sedentary work and, certainly, an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere intuition **or conjecture regarding what a physician's clinical findings equate to in terms of physical abilities**.") (citation and footnote omitted; emphasis added).

As recently articulated in *Sanjean v. Astrue*, No. 11–1395–SAC, 2013 WL 27782 (D. Kan. Jan. 2, 2013), an appeal of an ALJ's determination "that plaintiff had the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a)[,]"

> According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." . . . When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. **It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his**

> **conclusions.** When the ALJ has failed to comply with SSR 96–8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review.

*Id.* at *2 (emphasis added and multiple internal citations omitted).

In contrast, what the ALJ has done in this matter is, simply, (1) articulate sufficient good cause to reject the plaintiff's treating source opinions; (2) highlight some of the plaintiff's testimony; (3) walk through the medical evidence; (4) and **hope** that by doing so his RFC determination will be affirmed as being supported by substantial evidence.[7] The ALJ's failure to consider the medical and other evidence and link that evidence—*i.e.*, "describing how the evidence supports each conclusion"—to his ultimate conclusion that the plaintiff retains the ability to perform less than the full range of sedentary work, however, compels the Court to conclude that the RFC determination is not supported by substantial evidence, which prevents meaningful review by this Court and requires that this matter be remanded to the Commissioner for

---

[7]     The ALJ's reliance on the conclusory "opinions" of Dr. Chu (whose opinion was "this patient does not qualify for disability at this time" (R. 265)) and Dr. Heilpern (who merely summarizes the medical evidence and notes, abstrusely, "02-Not severe" (R. 280)) also do not advance the Commissioner's quest to show that the RFC determination is supported by substantial evidence. *Cf. Miller v. Barnhart*, No. CIV A 5:06CV00025, 2006 WL 2796780, at *6 (W.D. Va. Sept. 28, 2006) ("Manifestly, the conclusory opinion of the state agency physicians concerning the plaintiff's residual functional capacity cannot be considered substantial evidence justifying a rejection of a treating physician's contrary opinion based upon a extensive longitudinal treatment record."). Nor does the Commissioner benefit from her argument on appeal that "[s]ince the ALJ's [RFC] assessment for a reduced range of sedentary work *was not inconsistent with* the opinions of Drs. Claytor, [a treating source,] Chu, or Heilpern, substantial evidence supported the ALJ's assessment of Plaintiff's functional limitations . . . ." (Doc. 15 at 12-13 (emphasis added).) The Commissioner provides no support for such an argument, which is not surprising since it is at odds with the standard for determining RFC set out in this opinion.

further consideration.[8]   *See, e.g., Saunders*, 2012 WL 997222, at *5 (concluding that, where the record does not include an evaluation of the plaintiff's ability to perform the physical requirements of work, "[i]t is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday"); *cf. Dunham v. Astrue*, No. 1:09CV 53 SNLJ(LMB), 2010 WL 2553878 (E.D. Mo. May 6, 2010) ("There is no opinion from any physician, treating or consulting, regarding plaintiff's *ability to function in the workplace* with his combination of impairments.   As such, there is no medical evidence in the record suggesting that plaintiff can, or cannot, perform light work.") (emphasis added), *report & recommendation adopted*, 2010 WL 2553882 (E.D. Mo. June 23, 2010).

<u>Conclusion</u>

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying the plaintiff benefits be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision.   The remand pursuant to sentence four of § 405(g) makes Plaintiff a prevailing party for purposes of the Equal

---

[8]       The court in *Watson*, in which, "[n]one of the doctor reports put functional limitations upon [the plaintiff,]" in contrast to this record, mentioned the transcript of the hearing "where the ALJ and her attorney questioned [the plaintiff] about her ability to work." 2011 WL 626559, at *4.   At the hearing in this matter, the ALJ in this matter broached that same subject, as noted in his decision (*see* R. 14-15), but the plaintiff testified that she could only remain in a seated position for 30-40 minutes and could not lift five pounds, stating that when she went to Dr. Simmons, "he told me not to lift anything over five pounds."   (R. 61, 63.) Although the ALJ found the plaintiff not fully credible, it should be noted that her testimony does not comport with the definition of sedentary work.   The ALJ also cites a disability report, a function report, and a third-party function report, but does not address the contents of these reports nor how this evidence supports his conclusion that the plaintiff retains the ability to perform sedentary work with additional limitations.

Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

    **DONE and ORDERED** this the 21st day of March, 2013.

                                        s/WILLIAM E. CASSADY
                                        **UNITED STATES MAGISTRATE JUDGE**